UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

WILLIAM MALIHA,

        Plaintiff,

  -against-                                      1:04-CV-1127
                                                        (LEK/DRH)

FRANK FALUOTICO and
SARA G. MALIHA,

        Defendants.

## MEMORANDUM-DECISION AND ORDER

Plaintiff William Maliha ("Plaintiff") initiated this action against Defendants Frank Faluotico ("Defendant Faluotico") and Sara Maliha ("Defendant Maliha") following a domestic dispute involving Plaintiff and Defendant Maliha. Compl. (Dkt. No. 1). Pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendants caused his false arrest and violated his Fourth Amendment right to be free of illegal search and seizure. Id. at ¶ 44. Plaintiff also alleges that "[b]y falsifying official government documents for and with the purpose of injuring plaintiff and denying him a fair trial, defendants violated plaintiff's right to due process as protected by the Fourteenth Amendment to the United States Constitution." Id. at ¶ 45. Plaintiff seeks compensatory and punitive damages and attorneys' fees. Id. at 9.

Presently before the Court are two Motions for summary judgment brought by Defendants pursuant to Rule 56 of the *Federal Rules of Civil Procedure*. Dkt. Nos. 29, 30. For the reasons stated below, the Court grants Defendants' Motions for summary judgment and dismisses the case in its entirety.

**I.     Background**

Plaintiff and Defendant Maliha were married in May, 1993. Compl. (Dkt. No. 1) at ¶ 4. On June 19, 2002, the couple had an argument at their residence. Deft. Faluotico Statement of Material Facts (Dkt. No. 29, Attach) at ¶ 10. Plaintiff alleges that the altercation occurred after he grabbed his camera from Defendant Maliha, who, in response, flung around and started punching him in the face. Plntf's Statement of Material Facts (Dkt. No. 36) at 9. It is undisputed that during the incident, Plaintiff held Defendant Maliha by her wrists and backed her up into a kitchen cabinet. Deft. Maliha's Statement of Material Facts (Dkt. No. 31, Attach. 3) at ¶¶ 4-5; Plntf's Statement of Material Facts (Dkt. No. 36) at 3. While Plaintiff pinned Defendant Maliha to the kitchen counter and cabinets, Defendant Maliha told their daughter to call 911. Deft. Maliha's Statement of Material Facts (Dkt. No. 31, Attach. 3) at ¶ 7. Defendant Maliha took the telephone and started to call 911, but Plaintiff grabbed the telephone's antenna and asked Defendant Maliha not to call the police. Plntf's Statement of Material Facts (Dkt. No. 36) at 10. Defendant Maliha left the house with her daughter and went to her neighbor's house to call 911. Deft. Maliha's Statement of Material Facts (Dkt. No. 31, Attach. 3) at ¶¶ 9-10.

Deputy Sheriff John M. Sperath of the Ulster County Sheriff's Department ("Sheriff's Department") responded to the 911 call. Id. at ¶ 11-12. After Deputy Sperath left, Defendant Maliha called Defendant Faluotico. Deft. Faluotico Statement of Material Facts (Dkt. No. 29, Attach) at ¶ 20. Defendant Faluotico was then employed as a Detective in the Sheriff's Department. Id. at ¶ 1. He knew Plaintiff and Defendant Maliha and was aware that Plaintiff was a volunteer member of the Sheriff's Department. Deft. Faluotico Aff. (Dkt. No. 29, Attach.

2

17) at ¶ 4. Defendant Faluotico was also personally aware that Plaintiff had a large collection of weapons in his home. Id. at ¶ 5. At the time of the incident at issue, Plaintiff owned approximately 12 long rifles and 10 to 13 handguns. Deft. Faluotico Statement of Material Facts (Dkt. No. 29, Attach. 18) at ¶ 6.

During their phone conversation, Defendant Maliha told Defendant Faluotico that Plaintiff had grabbed her and pushed her up against the counter, that she had marks on her arms, and that Plaintiff had harassed her. Deft. Faluotico Depostion (Dkt. No. 29, Attach. 11, Ex. H) at 50. Defendant Maliha also said that her daughter was in the house when the incident occurred and that Defendant Maliha was afraid of Plaintiff. Id. at 51. After speaking with Defendant Maliha, Defendant Faluotico called the Sheriff's Department's headquarters and Deputy Sperath. Deft. Faluotico Statement of Material Facts (Dkt. No. 29, Attach. 18) at ¶¶ 21-22. Deputy Sperath returned to the scene after his conversation with Defendant Faluotico and prepared a complaint charging Plaintiff with harassment in the second degree. Id. at ¶ 23.

Through a request under New York's Freedom of Information Law, Plaintiff obtained tape recorded conversations between members of the Sheriff's Department related to his arrest. Plntf's Mem. of Law (Dkt. No. 35) at 9, n.9. Based on these recordings, Plaintiff alleges that Deputy Sperath initially reported that he had no basis to arrest Plaintiff, and that it was only after Defendant Faluotico intervened that Deputy Sperath prepared a complaint that "materially exaggerated [P]laintiff's conduct."[1] Id. at 9, 19.

---

[1] Defendants assert that the Court should not consider the statements contained in these conversations because they are hearsay and Plaintiff has not established the authenticity or admissibility of the transcripts of these conversations. Deft. Faluotico Reply Mem. (Dkt. No. 37, Attach. 2) at 2; Deft. Maliha Reply Aff. (Dkt.

At approximately 10:00 pm that evening, Deputy Sperath and Deputy Eric arrested Plaintiff at his home. Id. at 25. Plaintiff was arraigned in front of Hurley Town Court Judge Parker and ordered to stay away from Defendant Maliha. Id. at ¶¶ 28-29. Judge Parker ultimately dismissed the criminal charge of second degree harassment. Id. at ¶ 34. Both Defendant Maliha and Plaintiff subsequently filed family offense petitions in Ulster County Family Court. Deft. Maliha's Statement of Material Facts (Dkt. No. 31, Attach. 3) at ¶¶ 17-18.

Family Court Judge Mary Work presided over a trial regarding the petitions and custody of the Malihas' daughter in September, 2002. Id. at ¶ 21. In a Decision and Order dated June 27, 2003, Judge Work found that Plaintiff "started the physical part of the altercation by coming across the room, grabbing Sara Maliha's arm and attempting to forcibly remove the camera from her." Work Dec. & Order (Dkt. No. 29, Attach. 4, Ex. B) at 6. Moreover, Judge Work found that while Defendant Maliha fled the residence and went to a friend's house to call the police, Plaintiff did not act likewise. See id.

In New York, family court and the criminal courts have concurrent jurisdiction over any proceeding concerning acts which would constitute harassment in the second degree between spouses. N.Y. Family Ct. Act § 812 (Consol. 2007). Judge Work found that Plaintiff had harassed Defendant Maliha in the second degree as defined under New York Penal Law § 240.26 (1). Id. at 7-8. After hearing testimony from both Plaintiff and Defendant Maliha, Judge Work concluded:

---

No. 39, Attach. 1) at ¶ 4. Defendants also assert that nothing in the tapes raises a triable issue of fact as to the existence of probable cause. Deft. Faluotico Reply Mem. (Dkt. No. 37, Attach. 2) at 2

> The Court believes that William Maliha did grab Sara Maliha before he tried to grab the camera. He had to cover more than ten feet to reach her, and she was in the process of leaving with the camera. Her report that he grabbed her first and then reached for the camera makes sense. Whether she struck him once as she admitted or three times as he claimed, she clearly did so after he grabbed her, and her intent was to get away from him, not to harass, annoy or alarm him. William Maliha on the other hand clearly subjected Sara Maliha to physical contact, intended to alarm her into giving up the camera and then to prevent her from calling the police.

Id. at 7. However, Judge Work did dismiss Defendant Maliha's petition against Plaintiff in the interests of justice; she did so because there was little point in holding a hearing on a family offense that appeared to be an isolated event, no other events had been reported to the court in the nine (9) months following the filing of the petitions, and that took place as the marriage failed. Id. at 8.

**II.     Discussion**

    **A.     Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Courts applying this standard must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 216) (2d Cir. 2006)).

5

Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). The nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

### B.     False Arrest Claim

Defendant Faluotico asserts that, assuming his participation in Plaintiff's arrest, summary judgment dismissing the false arrest claim is warranted based on the existence of probable cause to arrest Plaintiff for harassment in the second degree. Deft. Faluotico Mem. of Law (Dkt. No. 29, Attach. 19) at 7. "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotations and citations omitted). Probable cause exists when the arresting officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Id. This determination should be based on an objective inquiry of the facts known to the arresting officer at the time of the arrest. Jaegly v. Couch, 439

6

F.3d 149, 154 (2d Cir. 2006) (quoting Devenpeck v. Alford, 543 U.S. 146, 152-53 (2004)).  If there is no dispute as to the pertinent events and the knowledge of the officers, a court can find that probable cause existed as a matter of law.  See Weyant, 101 F.3d at 852.  Accordingly, the Court must determine whether a reasonable juror could believe that there was not probable cause to arrest Plaintiff for harassment in the second degree.  See Jaegly, 439 F.3d at 152.

Under New York law, a person is guilty of harassment in the second degree, in pertinent part, when, "with intent to harass, annoy or alarm another person. . . [h]e or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same." N.Y. PENAL LAW § 240.26 (McKinney 2000).  Plaintiff argues that the events surrounding his arrest are in dispute and that the issue of probable cause should be decided by a jury.  Plntf's Mem. of Law (Dkt. No. 35) at 21-22.  In support, Plaintiff alleges that Defendant Faluotico exaggerated the available information to satisfy the probable cause standard, and failed to investigate the matter properly and contact Plaintiff for his version of the events in question. Id. at 22-23.  As a result, Plaintiff claims that Defendant Faluotico failed to discover that Plaintiff allegedly only grabbed Defendant Maliha in self-defense and may not have had the requisite intent to "harass, annoy, threaten or alarm."  See id.  Plaintiff further asserts that because Deputy Sperath initially did not charge Plaintiff, Defendant Faluotico had reason to doubt the existence of probable cause based on the statements from Defendant Maliha.  See id.

Among the undisputed facts related to the incident in question are: Plaintiff held Defendant Maliha by her wrists and pushed her against the kitchen cabinets; Plaintiff prevented Defendant Maliha from calling 911; and Defendant Maliha left the scene with her daughter and

7

went to her neighbor's house to call 911 and Defendant Faluotico.  Additionally, Defendant Faluotico has stated that Defendant Maliha, while relaying this information to him during their conversation, told him that she was afraid.  Therefore, at the time of the arrest, based on Defendant Maliha's representations, Defendant Faluotico believed that Plaintiff had held and shoved Defendant Maliha and that Defendant Maliha had fled the scene as a result.  It was entirely proper for Defendant Faluotico to rely on trustworthy statements from a witness to determine whether probable cause existed.  See Raymond v. Smith, 136 F. Supp. 2d 71, 79 (N.D.N.Y. 2001) (Hurd, D.J.) (citing Martinez v. Simonetti, 202 F.3d 625, 633 (2d Cir. 2000)).  In this instance, there was every reason to credit the allegations as the apparent victim, Defendant Maliha, recounted these facts soon after she fled the scene in fear, going to her neighbors' house.  Accordingly, the facts as then-known to Defendant Faluotico, and which are now undisputed, when taken together are sufficient proof of the probability of criminal activity to give a reasonable officer probable cause to believe that Plaintiff shoved Defendant Maliha and acted with the requisite intent.  Defendant Faluotico did not need proof beyond a reasonable doubt to arrest Plaintiff, nor is the eventual disposition of the criminal charge relevant to the probable cause determination.  See Bayne v. Provost, No. 1:04-CV-44, 2005 WL 1871182, at 6 (N.D.N.Y. Aug. 4, 2005) (McAvoy, Senior D.J.).  Accordingly, no reasonable juror could find that there was no probable cause to arrest Plaintiff for harassment in the second degree.

Defendant Faluotico also argues that Judge Work's decision finding that Plaintiff committed harassment in the second degree requires the Court to find that probable cause existed and dismiss Plaintiff's claim for false arrest.  Deft. Faluotico Mem. of Law (Dkt. No. 29,

Attach. 19) at 9.  State court judgments have the same preclusive effect in federal courts as they would have in the courts of that state.  Green v. Montgomery, 219 F.3d 52, 55 (2d Cir. 2000).  Collateral estoppel applies under New York law only "'if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." Id. (quoting Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995)).  Moreover, when a § 1983 plaintiff has been convicted of the offense for which he was arrested, that fact has generally been accepted as conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of the arrest.  Cameron v. Fogarty, 806 F.2d 380, 388 (2d Cir. 1986).  While Judge Work's analysis is persuasive, it is not preclusive as to the issue of probable cause.  In the earlier proceeding, Judge Work did ultimately dismiss the petition in the interest of justice; therefore, it would stretch the test to conclude that Judge Work's conclusion was actually and necessarily decided and reviewed by the appellate court such that it should bind this Court.

     Defendant Faluotico has also argued alternative grounds for dismissal.  Defendant Faluotico asserts that he did not arrest Plaintiff and, therefore, Plaintiff cannot allege personal involvement, which is a prerequisite for an award of damages under § 1983.  Deft. Faluotico Mem. of Law (Dkt. No. 29, Attach. 19) at 5.  In addition, Defendant Faluotico also argues that he is entitled to qualified immunity and that the Complaint may be dismissed on those grounds. Id. at 11.  Having dismissed the false arrest claim because there was probable cause to arrest Plaintiff, the Court does not need to, and, therefore, does not, address these arguments.

    **C.**    **Due Process Claim**

In the Complaint, Plaintiff's second cause of action states:

> By falsifying official government documents for and with the purpose of injuring plaintiff and denying him a fair trial, defendants violated plaintiff's right to due process as protected by the Fourteenth Amendment to the United States Constitution, as made actionable against them pursuant to 42 U.S.C. sec. 1983.

Compl. (Dkt. No. 1) at ¶ 45. In his Memorandum of Law, Plaintiff argues that Defendant Faluotico "made up statements in an effort to have the plaintiff arrested, exaggerated the available evidence, made pejorative, slanderous and false statements about the plaintiff . . . [that] led to the loss of plaintiff's liberty . . . [and] infring[ed] on his liberty and property interests." Plntf's Mem. of Law (Dkt. No. 35) at 23. Plaintiff concludes that Defendant Faluotico's alleged actions were "offensive to human dignity and an offense to the conscience." Id. at 24. Fourth Amendment standards govern the examination of claims arising out of a deprivation of liberty. Snow v. Vill. of Chatham, 84 F. Supp. 2d 322, 327 (N.D.N.Y. 2000) (Kahn, D.J.) (citing Albright v. Oliver, 510 U.S. 266 (1994)). As described in his Memorandum of Law, Plaintiff's due process claim directly arises from Defendants' actions that allegedly deprived him of liberty. As a result, Plaintiff's due process claim is more properly characterized as a false arrest claim, and not a substantive due process violation, and must be dismissed because the Fourth Amendment provides the constitutional foundation for such claims. See id.

### D. Claims Against Defendant Maliha

Plaintiff asserts claims against Defendant Maliha pursuant to § 1983. "To state a claim under § 1983, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States (2) which has taken place under color of state law." Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997) (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982)). The Court has dismissed Plaintiff's due process claim and has found that Defendant Faluotico had probable cause to arrest Plaintiff. Accordingly, there is no constitutional violation under which Plaintiff can sustain an action against Defendant Maliha under § 1983. Therefore, the Court also grants Defendant Maliha's Motion for summary judgment.

Defendant Maliha also seeks an award of reasonable attorney's fees under 42 U.S.C. § 1988. However, counsel for Defendant Maliha has not submitted the records necessary for the Court to determine the propriety of awarding attorney's fees. Therefore, the Court declines to grant fees to Defendant Maliha and dismisses Defendant Maliha's Motion for attorney's fees without prejudice to re-filing.

### III. Conclusion

Accordingly, it is hereby

**ORDERED**, that Defendant Faluotico's Motion for summary judgment (Dkt. No. 29) is **GRANTED** and the claims against Defendant Faluotico are **DISMISSED**; and it is further

**ORDERED**, that Defendant Maliha's Motion for summary judgment (Dkt. No. 31) is **GRANTED IN PART** and **DENIED IN PART** and the claims against Defendant Maliha are

**DISMISSED**; and it is further

**ORDERED**, that Defendant Maliha's Motion for attorney's fees (Dkt. No. 31) is **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) and the case are **DISMISSED** in their **ENTIRETY**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties by regular mail.

**IT IS SO ORDERED.**

DATED:   February 28, 2007
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge